Filed 7/30/26  Thompson v. County of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KEIRA THOMPSON,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>COUNTY OF SAN DIEGO,<br><br>　　　Defendant and Respondent. | D085352<br><br><br>(Super. Ct. No. 37-2022-00040739-CU-WT-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Law Office of MK Vasquez and Melinda Vasquez for Plaintiff  and Appellant.

Office of County Counsel, Damon M. Brown, County Counsel, and David M. Stotland, for Defendant and Respondent.

Appellant Keira Thompson filed a complaint against the County of San Diego (County) after the County terminated her employment as an animal control officer.  The court dismissed her first amended complaint with leave to amend only one cause of action under Labor Code section 1102.5.  In

so doing, the court explained that Thompson had not alleged sufficient facts to determine whether she had complied with the requirement under section 915 of the Government Claims Act (Gov. Code,[1] § 810–996.6) that a party seeking money damages against the County first present the claim to the proper County entity for consideration. It also determined that Thompson's whistleblower retaliation claim under Labor Code section 1102.5 did not adequately allege that she informed the County of reasonable suspicions of illegal activity, as required by the statute.

Thompson added five new causes of action in her second amended complaint (SAC), in addition to reasserting the Labor Code section 1102.5 claim. In response, the court sustained the County's demurrer without leave to amend and dismissed the SAC. It concluded Thompson had not remedied the presentment defects or the deficiencies in the Labor Code section 1102.5 allegations and had otherwise exceeded the scope of the court's prior order granting leave to amend by adding additional causes of action. As to a new claim for wrongful termination in violation of public policy, the court further noted that the County cannot be liable under a common law tort theory. Thompson appeals from the judgment following this order.

We conclude the SAC did not allege compliance with the Government Claims Act's presentment requirement, which is a prerequisite to filing a lawsuit against the County. Accordingly, we affirm.

_____

[1] Subsequent undesignated statutory references are to the Government Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

Thompson filed her initial complaint against the County in October 2022. In January 2023, she filed an amended complaint alleging five causes of action against the County and two County employees. Her third cause of action alleged retaliation, harassment, and discrimination in violation of Labor Code sections 1102.5 and 1106 et seq. She claimed she was retaliated against and subsequently terminated for reporting racist comments made by two instructors and for requesting accommodation while recovering from a cough. She had disclosed that the cough suppressant medication made her drowsy. In response, the County transferred her from driving a van to working in the kennels while she was medicated.

The court sustained the County's demurrer without leave to amend as to all but the third cause of action under Labor Code section 1102.5. As to that claim, the court determined that "[Thompson's] allegations [did] not adequately allege that [Thompson] informed [the County] of any ' " 'reasonably based suspicions' of illegal activity," meaning a violation of or noncompliance with a state or federal statute, rule or regulation.' (*McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 468–469.)" But the court acknowledged that facts might exist to support a Labor Code section 1102.5 violation and granted leave to amend "as to the third cause of action alone."

The court also noted that Thompson had not alleged compliance with section 915's presentment requirement by asserting she delivered the claim to the County "clerk, secretary, or auditor," mailed it to the appropriate

---

[2]  The background section is limited to those facts necessary to resolve the appeal.

3

party, or presented it to the County Counsel Claims Office.[3] The first amended complaint instead alleged she mailed her claim to the County of San Diego's Office of Ethics and Compliance (OEC). Although section 915, subdivision (e) states that a claim may be deemed properly presented if "[i]t is actually received by the clerk, secretary, auditor, or board of the local entity," the court pointed out that Thompson had not alleged facts sufficient to determine whether such actual receipt occurred. Thompson also had not attached the letter she sent to OEC or the alleged rejection letter she received. Accordingly, the court directed that if Thompson opted to file an amended complaint, she must also state facts sufficient to satisfy the Government Claims Act's presentment requirements.

In her SAC, Thompson reasserted her Labor Code section 1102.5 claim, this time as her fifth cause of action. She also added claims alleging disability discrimination, failure to accommodate disability, failure to engage in the interactive process of accommodation, and failure to prevent disability discrimination, all in violation of the Fair Employment and Housing Act (§ 12940, et seq.). A new sixth cause of action claimed wrongful termination in violation of public policy.

---

[3] The County filed a request for judicial notice below of Administrative Code section 149. The court cited this code section in its order sustaining the County's demurrer to the first amended complaint. Specifically, it explained that "[p]utting aside that the letters and reply to OEC were not submitted with the complaint but only attached to a later filed declaration (compare ROA 31 and ROA 44), they still do not indicate compliance with Government Code section 915(e) or the County's Administration Code (see, e.g., ROA 37, RJN, Ex. 1, Article X, Sec. 149 ["Claims under this Article shall be presented to the County Counsel Claims Office."])."

4

The SAC indicated that Thompson's attorney emailed the County's chief compliance officer, a County Counsel attorney,[4] and OEC Director Claudia Silva "regarding [Thompson's] complaints of Discrimination based on health, gender, and race." She then emailed the complaint to the OEC and mailed it to a County address. She states that she received a response from Silva "regarding how to file the complaint forms regarding a Former Animal Control Officer" and that Silva "carbon copied" the same County Counsel attorney on the email. In response to one of her attorney's follow-up emails, a woman whose title is not listed informed her " 'we do not have the authority to take any further action or investigation into your OEC Discrimination Complaint,' but 'to file your discrimination complaint with the County's Civil Service Commission, the California Department of Fair Employment and Housing, and the federal Equal Employment Opportunity Commission.' "

In sustaining the County's demurrer to the SAC without leave to amend, the court concluded Thompson had not remedied the presentment defects identified in its prior order. It further noted that Thompson exceeded the scope of the court's prior order by adding five new causes of action, which were "not necessary to amend her prior third cause of action." The court also concluded that, even if Thompson had met the presentment requirement, her retaliation cause of action still failed because she did not sufficiently alleged that this information could reasonably be construed as illegal. On a final note, the court explained that because the County could not be held liable for a common law tort, the sixth cause of action for wrongful termination in

---

[4]    She does not assert that this attorney was the head of the County Counsel office involved with the County Counsel Claims Office or in any other way the appropriate person to be served with such a claim.

violation of public policy was independently meritless under *Miklosy v. Regents of the University of California* (2008) 44 Cal.4th 876, 899.

## II.  DISCUSSION

### A. Standard of Review

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo; we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439.) To establish adequate pleading, a plaintiff must show the facts pleaded are "sufficient to establish *every element of that cause of action.*" (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) In making our determination, we "accept the truth of material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law." (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 346 (*State Hospitals*).)

We review the trial court's refusal to grant leave to amend the pleadings under the abuse of discretion standard. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) Abuse of discretion is established when the plaintiff satisfies his or her burden to demonstrate a reasonable probability the defect could be cured by amendment. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292–293.)

### B. Thompson Did Not Plead Compliance with the Government Claims Act

#### 1.  Legal Principles

The Government Claims Act requires plaintiffs to present all claims for money or damages against a local public entity to that entity before they may file suit. (§§ 905, 915, subd. (a); 945.4; see also *State of California v. Superior*

6

*Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1237.) "The purpose of the claims statutes is not to prevent surprise, but 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) These statutes also " 'enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future.' " (*Ibid.*)

A plaintiff may properly present a claim to a public entity by "(1) Delivering it to the clerk, secretary or auditor thereof. [¶] (2) Mailing it to the clerk, secretary, auditor, or to the governing body at its principal office. [¶] If expressly authorized by an ordinance or resolution of the public entity, submitting it electronically to the public entity in the manner specified in the ordinance or resolution." (§ 915, subd. (a).) The plaintiff must then wait until the claim has been acted upon or "deemed to have been rejected by the board." (§ 945.4.) Even if the public entity has actual knowledge of the circumstances surrounding the claim, the plaintiff is not excused from satisfying the claims statute. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 455.) Failure to timely comply with these requirements "bars a plaintiff from filing a lawsuit against that entity." (*Bodde, supra*, 32 Cal.4th at p. 1239.)

### 2. Analysis

Thompson's burden on appeal was to demonstrate error in the trial court's conclusion that the SAC failed to plead facts showing compliance with the Government Claims Act's presentment requirement. Because she has not alleged she satisfied this prerequisite to filing a lawsuit against the County or demonstrated a reasonable probability she could cure the defect if allowed to amend her complaint again, we affirm the judgment.

The SAC does not allege the claim was delivered to the "clerk, secretary or auditor," mailed to any of these individuals or the "governing body at its principal office," or emailed to an individual authorized by a specific ordinance or resolution. (§ 915, subd. (a).) Thus, there is no question Thompson did not strictly comply with section 915.

Nonetheless, Thompson contends she substantially complied by mailing the complaint to a county building address and emailing the complaint to the OEC. But "substantial compliance under the statute demands that the misdirected claim be 'actually received' by the appropriate person or board. (*Life v. County of Los Angeles* (1991) 227 Cal.App.3d 894, 901 (*Life*).) Our high court has confirmed that "[s]ection 915(e)(1) clearly and narrowly" limits claims deemed to have been presented in compliance with this section to those " '*actually received* by the clerk, secretary, auditor or board of the local public entity.' (Italics added.)" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990 (*DiCampli-Mintz*), quoting § 915, subd. (e)(1).)

The SAC does not assert that the clerk, secretary, auditor, or governing body actually received the claim. (§ 915, subd. (e)(1).) And we reject Thompson's argument that the OEC should have forwarded her claim to the proper office. First, she cites section 946.6 in support of her argument, which pertains to transfer of misfiled claims by *courts*, which are neutral entities. The County is the opposing party in this case, and thus the rationale for expecting courts to transfer cases does not apply. (See § 946.6, subd. (a) [which also notably only requires transfer *upon motion* of any party].) Second, "[t]he claimant bears the burden of ensuring that the claim is presented to the appropriate public entity." (*DiCampli-Mintz, supra*, 55 Cal.4th at p. 991.) It was her obligation to deliver it to the appropriate

8

recipient; she may not shift the burden to the OEC or other County officials. (See *Life, supra,* 227 Cal.App.3d at p. 901.)

We also are not persuaded by Thompson's assertion that the court improperly disregarded her allegation that actual receipt occurred. It concluded only that the SAC never alleged that one of the entities specifically listed in section 915 actually received the claim. The allegation that Silva's email told her "how to file the complaint form" does not demonstrate the complaint she had already filed with the OEC was actually received by the appropriate entity. The email indicating the OEC did "not have authority" likewise does not demonstrate that the clerk, secretary, auditor, or governing body actually received the complaint. Her incomplete and confusing sentence a few paragraphs later in the SAC does not override this reading. Thompson stated that, "[w]hen [she] received instructions from the Director of the Office of Ethics and Compliance, [she] received confirmation that she had filed the complaint to the appropriate a complaint was filed online and via mail on June 3, 2021." Even if we liberally construe this as indicating she viewed the email as confirming that the complaint she had already submitted online and mailed was provided to the right entity, we are not required to accept the truth of such deductions of fact or law. (See *State Hospitals,* 61 Cal.4th at p. 346.) This is particularly true where a properly judicially noticed County Administrative Code (see Evid. Code, §§ 452, subd. (b), 459, subd. (a)) indicated the claim should have been provided to the County Counsel Claims Office, not the OEC. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [in independently reviewing a judgment dismissing a complaint on a demurrer, "[c]ourts must also consider judicially noticed matters"].) And no further clarification can be gleaned by reference to the administrative complaint, the demand letter counsel claims to have included with it, or

9

Silva's email because none of these documents were attached to the SAC or otherwise included in the appellate record. Thus, the SAC failed to allege substantial compliance with the statute because it did not allege the appropriate public employee or board ever received the claim. (See *DiCampli-Mintz, supra*, 55 Cal.4th at p. 992.)

Nor does it matter that various County employees were aware of the claim because of her calls and emails. "Even if the public entity has actual knowledge of facts that might support a claim, the claims statutes still must be satisfied." (*DiCampli-Mintz, supra*, 55 Cal.4th at p. 990.)

We also disagree with Thompson's claim that the court improperly resolved factual disputes on a demurrer. Thompson asserts that the court found the OEC "cannot accept government claims." As an initial matter, the source of the quoted language is not cited in Thompson's brief and does not appear in the court's orders or judgment. Regardless, because the OEC is not the "clerk, secretary or auditor" or the "governing body at its principal office," it was her burden to plead facts demonstrating that the OEC *could* accept government claims, which she did not. We also find no merit to her assertions that the court decided the factual questions of (1) whether the OEC falls within the County Counsel Claims Office under Administrative Code section 149 and (2) whether County Counsel directed filing with the OEC. The court did not resolve these questions; it determined only that Thompson had not pled facts demonstrating she satisfied the government claims requirements.

Thompson next argues the County's actions demonstrate waiver and that it should be estopped from asserting presentment defects. Her assertions of waiver appear to focus on the County's failure to forward the claim to the proper recipient, its seven-month delay in responding that it

lacked authority to act on the claim, and its failure to specify that the claim must be filed elsewhere. As previously explained, we decline to shift to the County the burden of delivering the complaint to the appropriate recipient. (See *Life, supra*, 227 Cal.App.3d at p. 901.) And Thompson provides no authority for her assertion that the County waived the presentment requirement because the erroneously served county entity did not promptly notify Thompson's counsel of her error or explain how to rectify it.

Turning to Thompson's estoppel argument, which she raises for the first time on appeal, Thompson contends that after Silva directed her to a particular office by sending her claim filing instructions, the County cannot assert that the office lacked authority to address the claim. Equitable estoppel requires that the party to be estopped intended to induce reliance by the other party or acted in a way that reasonably caused the other party to believe reliance was intended. (*Millview County Water Dist. v. State Water Resources Control Bd.* (2019) 32 Cal.App.5th 585, 599.) It is not necessary to show the defendant intended to mislead the plaintiff. (*Ibid.*) But " '[r]eliance by the party asserting the estoppel on the conduct of the party to be estopped must have been reasonable under the circumstances.' " (*Ibid.*; see also *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152–1153 [reliance must be reasonable].)

As an initial matter, our high court has repeatedly stated that the doctrine of equitable estoppel "ordinarily will not apply against a governmental body except in unusual instances when necessary to avoid grave injustice and when the result will not defeat a strong public policy." (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 793.) Thompson has not addressed this authority or demonstrated such circumstances exist here. Furthermore, even if, reading the allegations in

11

the light most favorable to Thompson (*Villafana v. County of San Diego* (2020) 57 Cal.App.5th 1012, 1017), we conclude she alleged facts indicating her attorney detrimentally relied on Silva's instructions, the SAC does not demonstrate that such reliance was reasonable. "[T]he law 'particularly' disfavors estoppels 'where the party attempting to raise the estoppel is represented by an attorney at law.'" (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1316.) "For purposes of analyzing estoppel claims, attorneys are 'charged with knowledge of the law in California.'" (*Ibid.*)

*DiCampli-Mintz* is instructive here. In *DiCampli-Mintz*, the plaintiff's attorney personally delivered letters addressed to the risk management department of a hospital owned and operated by the County of Santa Clara. (*DiCampli-Mintz, supra*, 55 Cal.4th at p. 987.) During subsequent phone conversations, the head of the public entity's risk management department never told plaintiff's counsel that the claim was untimely or that it had been presented to the wrong recipient. (*Id.* at p. 988.) Nor was the plaintiff ever informed of these facts in writing. (*Ibid.*) The Supreme Court nonetheless determined that the plaintiff's failure to comply with the express presentation requirements of section 915 barred her lawsuit. (*DiCampli-Mintz,* at pp. 991–992; see also *Life, supra*, 227 Cal.App.3d at p. 902 ["[i]n view of section 915 and applicable case law, it cannot be maintained that [the] attorney . . . reasonably could rely on the advice of a medical records clerk to file a claim with the hospital's legal department, so as to estop the County"].)

Here too, the SAC does not allege Thompson's counsel even made clear that she sought to present a claim to satisfy section 915. It also does not allege Silva indicated the OEC was, in fact, the appropriate governing body. And nowhere does the SAC point to a County ordinance or resolution

12

expressly authorizing electronic submission, much less to the OEC. (§ 915, subd. (a)(3).) A reasonable attorney would be expected to confirm that an office that was not the County clerk, secretary, auditor, or board nonetheless satisfied the statutory requirement. Accordingly, we conclude Thompson did not adequately plead estoppel to support a showing of compliance with section 915's claim presentment requirement.[5]

The final question then is whether the trial court abused its discretion in refusing to grant leave to amend. (See *Zelig, supra*, 27 Cal.4th at p. 1126.) Although Thompson asserts that leave to amend should have been granted to clarify factual issues, she did not explain here or in her briefing before the trial court how she would remedy the claim presentation defect. Abuse of discretion is established only when the plaintiff satisfies his or her burden to demonstrate a reasonable probability the defect could be cured by amendment. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 292–293.) As Thompson already had one opportunity to cure this defect and has not suggested she could allege actual receipt pursuant to section 915 or any further facts supporting an estoppel claim, we find no abuse of discretion in the court's decision to dismiss without leave to amend.

---

[5] Because Thompson has not adequately alleged compliance with this prerequisite to pursuing a claim for damages against a government entity, we need not address the merits of the court's other reasons for dismissing the SAC.

## III. DISPOSITION

The judgment is affirmed. The County is entitled to its costs on appeal.


HUFFMAN, J.*

WE CONCUR:


CASTILLO, Acting P. J.


RUBIN, J.

---

*        Retired Associate Justice of the Court of Appeal, Fourth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.